UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------x
                                          :
KRISTEN SQUILLANTE                        :           3:18 CV 1522 (JAM)
                                          :
v.                                        :
                                          :
CITY OF HARTFORD, ET AL.,                 :           DATE: NOV. 25, 2019
                                          :
------------------------------------------------------x

RULING ON PLAINTIFF'S MOTION TO COMPEL (DOC. NO. 61)
AND DEFENDANTS' CROSS MOTION FOR PROTECTIVE ORDER (DOC. NO. 64)

I.  INTRODUCTION

The plaintiff, Kristen Squillante, commenced this employment discrimination action on September 10, 2018. (Doc. No. 1). The plaintiff filed an Amended Complaint that same day, (Doc. No. 2), and a Second Amended Complaint on December 10, 2018. (Doc. No. 23). She alleges that she was constructively terminated from her position at the City of Hartford ("COH") due to a hostile work environment, where she was subjected to sexual harassment and harassment based on her race. (Doc. No 23, at 1).

On September 24, 2019, the plaintiff filed the pending Motion to Compel the Deposition of Mayor Luke A. Bronin. (Doc. No. 61). On October 3, 2019, the Court (Eginton, J.) referred the plaintiff's Motion to Compel to the undersigned. (Doc. No. 62). This case was thereafter transferred to the United States District Judge Jeffrey A. Meyer on October 9, 2019. (Doc. No. 63). On October 15, 2019, the defendants filed a Cross Motion for Protective Order (Doc. No. 64), which Judge Meyer referred to the undersigned on October 26, 2019. (Doc. No. 65). The plaintiff filed a reply on November 5, 2019. (Doc. No. 68). For the reasons stated below, the plaintiff's Motion to Compel (Doc. No. 61) is GRANTED in part and DENIED in part, and the defendants' Cross Motion for Protective Order (Doc. No. 64) is GRANTED.

1

II. BACKGROUND

The following facts are taken from the plaintiff's Second Amended Complaint. (Doc. No. 23).

The plaintiff brings this action against the COH; Thomas J. Clarke II, a Councilman on the COH Court of Common Council ("Mr. Clarke");[1] John Bazzano, the Clerk for the COH and administrative supervisor of the COH Court of Common Council; and Olga Colon, the former executive assistant for the COH Court of Common Council. (Doc. No. 23 ¶¶ 1-4). The plaintiff began working for the COH in January 2016 as an executive assistant to Councilman James Sanchez. (*Id.* ¶ 10). She was also the Clerk of the Public Safety Committee, which Councilman Sanchez and Mr. Clarke co-chaired. (*Id.* ¶¶ 10, 17). She alleges that Mr. Clarke, a Councilman and the COH Court of Common Council's President, was the "direct supervisor of" and "highest ranking official in" the Court of Common Council's office. (*Id.* ¶ 18).

Among the plaintiff's allegations is that Mr. Clarke began sexually harassing her in 2016. Specifically, the plaintiff argues that, at that time, Mr. Clarke began to comment on the plaintiff's clothing and "give inappropriate and suggestive glances" at meetings. (*Id.* ¶ 47). He also began sending her inappropriate text messages and making sexual comments. (*Id*. ¶ 48). This behavior allegedly continued until May 2017, when the plaintiff submitted her resignation to Councilman Sanchez. (*Id*. ¶ 116). The plaintiff alleges that, "[a]fter the harassment from Mr. Clarke was uncovered, Mayor Luke Bronin and several members of the Court of Common Council called for Mr. Clarke to resign." (*Id*. ¶ 125). Mr. Clarke, however, has not resigned. (*Id*. ¶ 129). The plaintiff also claims discriminatory treatment and harassment by Ms. Colon (*Id.* ¶¶ 26-36, 99-14); she

---

[1] The Second Amended Complaint refers to Mr. Clarke by two different spellings of his last name, Clarke and Clark. For the sake of consistency and accuracy, this decision refers to him only by the spelling of his name in the caption of the case, which is Clarke.

maintains that she reported Ms. Colon's conduct to Mr. Clarke and Mr. Bazzano, but nothing was done. (*Id*. ¶ 142).

III. DISCUSSION

A. LEGAL STANDARD

"A party may, by oral questions, depose any person, including a party, without leave of court," unless the party has not stipulated to the deposition. *See* FED. R. CIV. P. 30(a). High ranking government officials, however, are generally shielded from depositions. The Second Circuit has held that "to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman v. New York City Dept. of Parks and Recreation*, 731 F.3d 199, 203 (2d Cir. 2013). This rule is based on the notion that such individuals have "greater duties and time constraints than other witnesses." *Id*. (quoting *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1992)).

B. MOTION TO COMPEL DEPOSITION OF MAYOR BRONIN

Mayor Bronin is a high-ranking official, and as such, in this Circuit, the plaintiff—as the party seeking to depose Mayor Bronin—bears the burden of demonstrating "exceptional circumstances justifying the deposition." *See Lederman*, 731 F.3d at 203. Having carefully reviewed the parties' briefs and accompanying documents, the Court finds that the plaintiff has not shown exceptional circumstances warranting Mayor Bronin's deposition.

In her motion to compel, the plaintiff explains that she seeks testimony from Mayor Bronin on 1) the adequacy of the COH's sexual harassment policies and procedures, including whether Mayor Bronin was aware of any inadequacy; 2) whether the COH was in compliance with state

law governing sexual harassment training for supervisors, including whether Mayor Bronin was aware of any noncompliance; 3) the management structure of the COH Court of Common Council, including whether Mr. Clarke was the plaintiff's actual or apparent supervisor; 4) whether the actions of Mr. Clarke and Mr. Brazzano were "objectively offensive"; and 5) Mayor Bronin's public statements concerning Mr. Clarke's conduct. (Pl.'s Mem. at 3-4). The plaintiff argues that Mayor Bronin's public statements and testimony from both the COH Director of Human Resources and Mr. Clarke support deposing Mayor Bronin. (Pl.'s Mem. at 4-5).

The plaintiff, however, has not shown any "extraordinary circumstances" justifying the deposition. *See Lederman*, 731 F.3d at 203. At the outset, nothing in the Court's review of the briefs and record indicates that Mayor Bronin had "unique first-hand knowledge" as to any of the facts alleged in the Amended Complaint.[2] *Id*. Indeed, Mayor Bronin is not a party to the action, and the only time he is mentioned in the Second Amended Complaint is in relation to a statement he made after Mr. Clarke's alleged treatment of the plaintiff was revealed. (*See* Doc. No. 23 ¶ 125).

Taking each category in turn, though the first two categories are relevant, the plaintiff has not shown that she could not obtain this information from other sources.[3] Nothing in the parties' briefs or the record before the Court suggests that Mayor Bronin has any special knowledge regarding the COH's sexual harassment policies or sexual harassment training. Indeed, the plaintiff has deposed Debra C. Carabillo, COH Director of Human Resources and has had a full opportunity to question her about the COH's sexual harassment policies and procedures and sexual harassment training for supervisors, including whether these matters were discussed with Mayor Bronin. *See*

---

[2] The only reference to Mayor Bronin in the Second Amended Complaint is the following sentence: "After the harassment from Mr. Clark was uncovered, Mayor Luke Bronin and several members of the Court of Common Council called for Mr. Clarke to resign." (Doc. No. 23 ¶ 125).

[3] The plaintiff argues in one sentence that "this information cannot be reasonably obtained from other sources" but does not thereafter provide any additional arguments or clarity on why this is so. (Pl.'s Mem. at 5).

*Winfield v. City of New York*, No. 15-CV-5236 (KHP), 2018 WL 4350246 (S.D.N.Y. Sept. 12, 2018) (denying deposition of Mayor de Blasio in civil rights case challenging New York City's Community Preference Policy in part because "[p]laintiffs have had a full opportunity to question various HPD Commissioners about . . . whether alternatives or changes to the policy were discussed with various mayors over time, including Mayor de Blasio").

The plaintiff similarly has not shown that Mayor Bronin's testimony is necessary regarding the COH Court of Common Council's management structure. As the defendants note, "Mayor Bronin, as the City's chief executive officer, is in a wholly different branch of government, one which has no authority by City Charter over the conduct of elected officials in the legislative branch." (Def.'s Mem. at 4). In light of this representation, the Court agrees with the defendants that Mayor Bronin is not the best source of this testimony. It appears to the Court that a member of the Court of Common Council, such as Mr. Clarke, or Ms. Carabillo would be better suited to testify regarding the Court of Common Council's management structure.

As to the fourth and fifth categories—whether the actions of Mr. Clarke and Mr. Bazzano were "objectively offensive" and Mayor Bronin's public statements after the plaintiff commenced this action—neither provides a basis to depose Mayor Bronin. Again, the plaintiff has not argued that Mayor Bronin was aware of any of the events alleged in the Second Amended Complaint prior to the commencement of this litigation. Instead, the plaintiff argues, "Mayor Bronin stated . . . that Mr. Clarke's conduct was 'inexcusable' and demanded his resignation . . . . Despite these statements the [COH] has pled that the hundreds of text messages to [the plaintiff] from Mr. Clarke were not so severe as to violate Title VII protections . . . . Mayor Bronin's testimony in this regard would certainly be enlightening to a tri[e]r of fact or at summary judgment." (Pl.'s Mem. at 4-5). Mayor Bronin's opinion, however, which was formed after the events alleged in the lawsuit

occurred, is simply not relevant to the plaintiff's claims. Moreover, Mayor Bronin's statements calling for Mr. Clarke's resignation are now a matter of public record.

Finally, even assuming, *arguendo*, that the plaintiff has established that Mayor Bronin has "unique first-hand knowledge," she has failed to show that the information cannot be obtained through other less burdensome or intrusive means. Indeed, aside from one conclusory sentence—"there [are] no less burdensome or intrusive means to get answers to these questions"—she does not argue this point. (Pl.'s Mem. at 5). Compelling this deposition would thus be inappropriate because the plaintiff has not shown, for example, that a limited deposition by written questions pursuant to Federal Rule Civil Procedure 31 would be ineffective in obtaining the information that she seeks.[4] Accordingly, for the foregoing reasons, the deposition of Mayor Bronin simply is not warranted. In light of this conclusion, the Court need not address the plaintiff's additional argument that an audiovisual deposition of Mayor Bronin should be conducted.

C. <u>SANCTIONS</u>

The plaintiff also argues that the defendants should be sanctioned for Mayor Bronin's failure to appear at the September 18, 2019 deposition. The plaintiff seeks the fees charged by the court reporter and videographer for attending the deposition as well as the attorney's fees associated with preparing for and attending the deposition and drafting the instant motion.

Federal Rule of Civil Procedure 37(d) provides, in relevant part, that where "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition," the court "must require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances

---

[4] In light of the Court's findings above, the Court will not order a deposition by written questions.

make an award of expenses unjust." FED. R. CIV. P. 37(d)(3). Such failure to appear is "not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." FED. R. CIV. P. 37(d)(2).

Here, Mayor Bronin's deposition was properly noticed for September 18, 2019 at 1:00 p.m. (Doc. No. 61-2 at 9-14). On September 17, 2019, the defendants' counsel emailed the plaintiff's counsel requesting a postponement of Mayor Bronin's deposition to September 30, 2019. (Doc. No. 61-2, at 19; Doc. No. 67, ¶ 2). The attorneys spoke on the phone that evening; the parties now dispute the contents of that call. (Doc. No. 67, ¶ 4; Pl.'s Mem. at 2). In any event, the plaintiff's counsel thereafter emailed the defendants' counsel informing her that the plaintiff did not consent to postpone the deposition. (Doc. No. 61-2, at 22). On September 18, 2019, the defendants' counsel emailed the plaintiff's counsel, asserting that the plaintiff's counsel had "admitted that [he] [did] not need Mayor Bronin's testimony" and that, "given [his] increasingly unprofessional behavior at the recent depositions . . . , the City has grounds to move for a protective order." (Doc. No. 61-2, at 24). The plaintiff's counsel responded, denying such admissions and stating his "inten[t] to move forward with the deposition." (Doc. No. 61-2, at 26). The defendants' counsel then emailed the plaintiff's counsel, informing him that she advised Mayor Bronin not to attend the deposition. (Pl.'s Mem. at 2). Mayor Bronin failed to appear at the September 18, 2019 deposition.

Sanctions are warranted for Mayor Bronin's failure to attend his deposition without first applying for a protective order. The defendants have not shown that the failure was "substantially justified" or that an award of expenses would be "unjust," FED. R. CIV. P. 37(d)(3), which is their burden. *See Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (citation omitted). The defendants argue that the plaintiff's counsel "pressured [her] to enter into settlement discussions," "conditioning his agreement to postpone the Mayor's deposition on the City's

7

willingness to formally enter settlement discussions," and told her that he did not need Mayor Bronin's deposition to prove the case. (Def.'s Mem. at 2, 5). The defendants also argue that sanctions are not warranted because the plaintiff's counsel was aware that Mayor Bronin would not be attending the deposition; and "the parties' course of dealing throughout this litigation [did not] provide[] [a] basis for the City to assume that the plaintiff would proceed with the deposition in the face of a clear indication that the City would not be attending." (Def.'s Mem. at 6-7).

These arguments, however, do not provide "substantial justification" for Mayor Bronin's failure to appear. Under Rule 37, "[c]onduct is substantially justified if there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *John Wiley & Sons, Inc. v. Book Dog Books, Inc.*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) (citation omitted). Such is not the case here. Rule 37(d) explicitly rejects the "ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." FED. R. CIV. P. 37(d)(2). "[I]t is the pendency of a motion for protective order that may be urged as an excuse for a violation of subdivision (d)," FED. R. CIV. P. 37(d) advisory committee's note to 1993 amendment, but no motion was pending when Mayor Bronin failed to appear. *See Kamps v. Fried, Frank, Harris, Shriver & Jacobson L.L.P.*, 274 F.R.D. 115, 118 (S.D.N.Y. 2011). To the extent that the defendants objected to the deposition, the proper course would have been to file a motion for a protective order before failing to appear. Further, the defendants have pointed to no other circumstances which would make an award of expenses "unjust."

Therefore, an award of "reasonable expenses, including attorney's fees, caused by the failure" is warranted. FED. R. CIV. P. 37(d)(3). As to the proper amount, the plaintiff's counsel affirms that he spent 5.45 hours preparing for Mayor Bronin's deposition, 2.10 hours drafting email responses and attending the deposition, and 7.35 hours researching and writing the instant motion,

but he does not provide contemporaneous time records. (Doc. No. 61-1 at 1). He affirms that his hourly rate is $250 an hour, which the Court agrees is a reasonable rate. (*Id.*). He also seeks $212.70 dollars in costs for the court reporter attending the conference and "unknown" amount in costs for the videographer. (*Id.*). The defendants do not contest the reasonableness of these amounts, arguing only that sanctions are not warranted. (Def.'s Mem. at 6-7).

The Court finds that an award of attorney's fees for 14.9 hours is not supported by the record. Rule 37(d) mandates reimbursement for reasonable expenses and fees "caused by the failure" of a party to attend a deposition. At the time the plaintiff filed the instant motion to compel, the defendants had not yet filed a motion for a protective order.[5] Indeed, the plaintiff's counsel stated in his affidavit that, on September 24, 2019, the day he filed the instant motion to compel, the defendants had offered to proceed with Mayor Bronin's deposition on September 30, 2019. (Doc. No. 61-1, at 1). Moreover, as discussed above, the Court is denying the plaintiff's motion to compel Mayor Bronin's deposition and granting the defendants' motion for a protective order. In light of these facts, the Court declines to award attorney's fees for the time spent drafting the motion to compel, writing email responses, or preparing for the deposition.

Further, as to the proper amount of an award for the time spent attending the deposition, the plaintiff's counsel affirms that he spent 2.10 hours "drafting email responses and attending the proposed deposition of Mayor Bronin." (Doc. No. 61-1). He does not clarify how much of the 2.10 hours he spent on each task. However, an email chain provided by the plaintiff reflects that the deposition was to take place at the plaintiff's counsel's office in Hartford, CT, (Doc. No. 61-2, at 19), and that the proposed deposition commenced at 1:16 p.m. on September 18, 2019. (Doc. No. 61-2, at 29). In light of these facts, it does not appear reasonable that the plaintiff's counsel incurred

---

[5] The defendants did not file a motion for a protective order until October 15, 2019, when they filed the instant Cross Motion for Protective Order. (*See* Doc. No. 64).

attorney's fees for more than one hour of time spent attending the deposition. Therefore, the Court finds that an award of $250 in direct costs incurred for the plaintiff's counsel attending the deposition is appropriate, as well as $212.70 in costs for the court reporter.[6]

IV. CONCLUSION

Accordingly, this Court concludes that the plaintiff's Motion to Compel (Doc. No. 61) is DENIED in part and GRANTED in part, and the defendants' Cross Motion for Protective Order (Doc. No. 64) is GRANTED. The defendants are directed to pay to the plaintiff's counsel a total of $462.70 in attorney's fees and costs by December 31, 2019.

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); and D. CONN. L. CIV. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated at New Haven, Connecticut, this 25th day of November, 2019.

    /s/ Robert M. Spector
Robert M. Spector
United States Magistrate Judge

---

[6] The defendants objected to Mayor Bronin's deposition being videotaped on September 17, 2019. (*See* Doc. No. 61-2 at 19 ("The City is also objecting to the deposition being videotaped, as the justification for same no longer appears applicable. I wanted to make sure all affected parties have been provided advance notice.")). In light of the defendants' prior objection, the Court declines to award costs incurred for the videographer to attend the deposition.